# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STEVEN HARRISON,

    Plaintiff,

v.                                               CIV 06-0552 WPJ/WPL

AFFIRMATIVE INSURANCE COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## and
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS CASE involves issues pertaining to an insurance coverage case regarding a carjacking resulting in injuries to Plaintiff. This case comes before the Court upon Defendant's Motion for Summary Judgment on its Counter-Claim for Declaratory Judgment and on Plaintiff's Claims for Breach of Insurance Contract and Bad Faith Insurance Practices, filed October 16, 2006 (**Doc. 15**) and Plaintiff's Motion for Summary Judgment, filed October 16, 2006 (**Doc. 14**). Having heard oral argument on the matter, and having considered the parties' briefs and the applicable law, I find that Defendant's motion is well-taken and shall be granted, and that Plaintiff's motion is not well-taken and shall be denied.

## I. FACTUAL BACKGROUND

### A. Procedural History

This case was removed from the Eleventh Judicial District Court, San Juan County on the basis of diversity jurisdiction. The carjacking occurred in Kansas City, Missouri. Defendant,

Affirmative Insurance Company, is a foreign insurance company authorized to do business in New Mexico. There are no genuine issues of material fact with respect to the elements of Plaintiff's claim. Both parties have moved for summary judgment on a dispute concerning a single question of law: whether Plaintiff's Uninsured Motorist Policy with Defendant covers the injuries to the Plaintiff caused when an unknown person carjacked and subsequently shot Plaintiff. The resolution of this legal question will dispose of the case.

**B.     The Incident**

On July 7, 2005, Plaintiff Steven Harrison was driving his vehicle, a 2002 Chevy Malibu in Kansas City, Missouri when he was carjacked at gunpoint at approximately 12:15 AM. Plaintiff was inside his car, stopped at a traffic light, when an unknown assailant tapped on the window of the car while brandishing a gun and demanded to be let inside the car. Plaintiff complied with the demand. The carjacker directed Mr. Harrison to drive the car to a specific location, and Plaintiff did so. Stopped at the location, the assailant told Plaintiff to stop the car and demanded money from Plaintiff. Plaintiff placed his wallet on the dashboard.

The carjacker shot Plaintiff in the right thigh while Plaintiff was still in the driver's seat of the vehicle. After being shot, Plaintiff removed the keys from the ignition, got out of the vehicle, and fell to the ground. The assailant also exited the vehicle and demanded more money from Plaintiff, and the car keys. Plaintiff explained that he had already given him all of his money, and gave the carjacker the keys to the vehicle. The carjacker drove away in Mr. Harrison's vehicle. The identity of the assailant is unknown, and consequently he has never been prosecuted for this incident.

### C.    The Insurance Policy

On July 7, 2005, there was in force a policy of insurance issued by Defendant Affirmative Insurance company ("Affirmative") to Plaintiff Steven Harrison ("the Policy"). The Policy included UM/UIM ("uninsured/underinsured") coverage for the amount of $25.000.00, pursuant to the terms, conditions and limitations of the Policy. The UM endorsement provided the following coverage

> A.   We will pay damages for which an "insured" is legally entitled to recover from the owner or **operator** of an:
>
> 1.   "Uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury":
>
> a.   Sustained by an "insured"; and
> b.   **Caused** by an accident.

Ex. C at 10 ("Uninsured Motorist Coverage - New Mexico endorsement") (emphasis added).

Plaintiff made a claim under his UM motorist coverage on this Policy following the July 7th incident, but the claim was denied by Affirmative on the grounds that the loss reported by Plaintiff was not covered under the UM motorist coverage in the policy.

Affirmative contends there is no coverage under the UM endorsement because there is not a sufficient causal nexus between the use of an alleged uninsured vehicle and the resulting injury to Plaintiff. Affirmative also contends that there is no coverage because the assailant was not "operating" an uninsured motor vehicle prior to his first encounter with Plaintiff (that is, prior to approaching Plaintiff's vehicle while brandishing a gun and demanding to be let inside the vehicle), and that Plaintiff continued to operate his own vehicle throughout the carjacking incident (including when he was shot in the right thigh by the assailant), until the point where both

individuals had exited the vehicle and the assailant re-entered the vehicle to flee the scene.

While Plaintiff does not dispute any of the facts presented by Affirmative, Plaintiff takes issue with the legal significance Affirmative attaches to the terms "operator" and to Plaintiff's position inside the car.

## II.   STANDARD

Summary judgment is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. (internal quotations omitted). Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. Id. at 248.

The parties' filing of cross-motions for summary judgment does not change this standard of review. Burrows v. Cherokee County Sheriff's Officers, 2005 WL 1185620 (D. Kan. May 18, 2005) (unpublished opinion) (citing Taft Broadcasting Co. v. U.S., 929 F.2d 240, 249 (6th Cir. 1991)). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." Buell Cabinet Co., Inc. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979).

Parties are in agreement that New Mexico law applies, since they entered into the

4

insurance contract in New Mexico.  See State Farm Auto. Ins. v. Ovitz, 117 N.M. 547, 549 (1994).  Under New Mexico law, summary judgment may properly be granted when the facts themselves are not in dispute, but only the legal effects of the facts presented for determination.  Koenig v. Perez,104 N.M. 664 (1986); see also, Swanson v. Fields, 814 F.Supp. 1007, 1010 (D.Kan), aff'd without opinion, 13 F.3d 407 (10th Cir. 1993) (where there are no genuinely disputed facts, party must show that applicable controlling law requires a decision in party's favor).

Affirmative notes, however, (and Plaintiff does not dispute) that Missouri law applies as well, because the rights and liabilities of persons injured in automobile accidents are determined under the laws of the state where the accident occurred – in this case, Missouri.  Ovitz, 117 N.M. at 549.  Affirmative contends that the laws of both New Mexico and Missouri would compel the same conclusion: supporting Affirmative's position that Plaintiff is not entitled to recover uninsured motorist benefits under the Policy for the carjacking incident.

### III.   DISCUSSION

The Uninsured Motorist Statute incorporates UM coverage into every automobile liability insurance policy issued in the state.  NMSA 1978, § 66-5-301(B); Phoenix Indem. Ins. Co. v. Pulis,129 N.M. 395, 398 (2000). The intent of the legislature in enacting this statute was to put an injured insured in the same position he would have been in had the tortfeasor had liability coverage in an amount equal to the UM/UIM protection purchased for the insured's benefit.  See Morro v. Farmers Ins. Group, 106 N.M. 669, 672 (1988).

New Mexico courts "resolve questions regarding insurance policies by interpreting their terms and provisions in accordance with the 'same principles which govern the interpretation of

all contracts.'" See, Ponder v. State Farm Mutual Automobile Ins. Co.,129 N.M. 698 (N.M. 2000) (quoting Rummel v. Lexington Ins. Co.,123 N.M. 752 (1997)). Analysis of insurance policies begins with the primary goal of "ascertain[ing] the intentions of the contracting parties with respect to the challenged terms at the time they executed the contract." See, Strata v. Mercury, 121 N.M. 622 (1996). Absent an ambiguity, a court is bound to interpret and enforce a contract's clear language and thus cannot create a new agreement for the parties. See, Montoya v. Villa Linda Mall, Ltd., 110 N.M. 128, 129 (1990).

    **A.**    **Defendant's Motion for Summary Judgment**

        **1.**    **Causal Nexus**

Affirmative relies on several New Mexico cases that have considered language similar to the Policy regarding uninsured motorist cases involving intentional assaults on the insured. Britt v. Phoenix Indem. Ins. Co.,120 N.M. 813 (N.M.,1995) sets out a three-part test for determining whether intentional conduct and its resulting harm arises out of the use of an uninsured vehicle. Daniel Britt was a passenger in a vehicle which was struck from behind by another vehicle. Neither Britt nor the driver sustained injury from the collision. When Britt exited the vehicle to assess the damage, two male passengers exited the other vehicle, and a physical altercation ensued. As Britt retreated to his vehicle, one of the men pursued him and stabbed him through the open passenger-door window.

The auto policies of both vehicles specified that coverage applied to "accidents" arising out of the "ownership, maintenance or use of the uninsured motor vehicle." 120 N.M. at 815. As the court in Britt noted, this policy language generally tracks the language of the New Mexico uninsured motorist statute. 120 N.M. at 815 (citing § 66-5-301).

Applying the three-part test, a court first considers whether there is a sufficient causal nexus between the use of the uninsured vehicle and the resulting harm. This "causal nexus" requires that the vehicle be an "active accessory" in causing the injury. If a court finds that there is a sufficient causal nexus, then it should next consider whether an act of independent significance broke the causal link between the use of the vehicle and the harm suffered. Finally, the court must consider whether the "use" to which the vehicle was put was a normal use of that vehicle. 120 N.M. at 818-19.

Affirmative contends that the facts behind the carjacking in this case do not demonstrate a sufficient causal nexus between the use of an uninsured vehicle and the resulting injury to Plaintiff, because of the way the requisite causal link is defined by New Mexico cases. One such case is State Farm Mutual Auto. Ins. Co. v. Blystra, 86 F.3d 1007 (10th Cir. 1996)(applying New Mexico law). Kevin Blystra was a sixteen-year old walking home from school when he was shot in the leg with a pellet gun by either the passenger or driver of a white pickup truck. The assailant was never identified. Kevin was covered under several policies in effect at the time, each of which provided for payment of damages for bodily injury or property damage for an "accident arising out of the ownership, maintenance or use of an uninsured motor vehicle."[1]

In applying the three-part Britt test, the court in Blystra determined that in order for there to be a causal link between the use of the truck and Kevin's injuries, the vehicle must have been "an active accessory in causing the injury." 86 F.3d at 1012 (citing Britt, 907 P.2d at 999). The court then concluded that the causal link requirement was met because the white truck that

---

[1] One group of policies provided that damages would be collected "from the owner or *driver* of an uninsured motor vehicle," while the other provided for recovery of damages "from the owner or *operator* of an uninsured motor vehicle." 86 F.3d at 1009.

7

transported the assailant who shot Kevin Blystra was an "active accessory" to Kevin's assault.[2]

Affirmative relies on other New Mexico cases that have also required the "active accessory" component in order to satisfy the causal nexus part of the Britt test. In Barncastle v. American Nat. Prop. and Cas. Companies, 129 N.M. 672, 11 P.3d 1234 (N.M.App.,2000), John Barncastle was shot by an unidentified passenger of an unidentified vehicle. As Barncastle sat in the driver's seat of an insured vehicle at an intersection, the assailant got out of his car, walked over to Barncastle's window, and shot him with a handgun. The assailant then returned immediately to his vehicle, and left the scene at a high rate of speed with its headlights off. Barncastle, like Kevin Blystra, suffered substantial personal injuries. The court in Barncastle concluded that the UM policies covered the assault on Barncastle, applying the Britt test. The vehicle was an "active accessory" in the attack because it was an integral element of the shooting. The assailant used his vehicle to get into a position where he could get out and shoot Barncastle, and then used it to flee the scene. 129 N.M. at 674.

In Hartford Ins. Co. of the Midwest v. Estate of Tollardo, 409 F.Supp.2d 1301 (D.N.M., 2005) ("Tollardo"), a causal nexus was found to be lacking where an assailant did not use his vehicle as an "active accessory" to the crime. The analysis the court applied in Tollardo indicates how narrowly New Mexico law construes the "active accessory"component. In that case, the assailant initially used his truck to search for an acquaintance whom he suspected of burglarizing his apartment, in order to take out his revenge. He eventually gave up the search. He was driving

---

[2] The court also found that the second part of the Britt test was easily satisfied. No act of independent significance broke the causal link between Kevin's injuries and the assailant's use of the uninsured vehicle precisely because the vehicle was an "active accessory" to the assault. Blystra, 86 F.3d at 1014.

on his way home when, by chance, he spotted the blue car he had been looking for, parked at a gas station. The assailant suddenly applied his brakes and missed two entrances into the gas station, causing his truck to jump over a curb and slam into a pole. The assailant left his truck and ran the distance toward the blue car with a loaded gun in each hand. He fired into the car, and in trying to kill the intended victim, also managed to kill three other passengers. After running out of ammunition, the assailant ran back to his truck and left the scene. He later confessed to the killings of four individuals.

The court in Tollardo found that the assailant's truck was not an "active accessory" to the crime because the assailant was not using his car to assist in any plot against the occupants of the blue car, but for the sole purpose of going home. The court also found that the facts indicated that the truck hindered, rather than aided the assailant in launching his deadly attack because when the truck's crash ended its usefulness in the attack, Perea still had to cross the parking lot on foot to reach the blue car. 409 F.Supp.2d at 1309-10. The truck was not used to establish an element of surprise when confronting the victims, nor did it assist the assailant in getting into a position to shoot them.

The court rejected the contention that the assailant's use of the truck to escape from the gas station qualified the vehicle as an "active accessory" to the crime. Noting that neither New Mexico courts nor the Tenth Circuit have addressed the issue of whether using a vehicle to escape qualifies the vehicle as an "active accessory," the court followed the Minnesota line of cases in finding that the use of an automobile for transportation to the scene of a crime did not satisfy the "active accessory" requirement.[3]  409 F.Supp.2d at 1310. The court then extended this reasoning

---

[3] In Britt, the New Mexico court adopted the Minnesota test.

9

to conclude that use of a vehicle for transportation *away* from the scene of a crime has even less of a causal connection to the crime because "the injury would occur before the use of the vehicle to escape." Id.

Thus, in order for the UM endorsement of the Policy to apply to Mr. Harrison's assault and resulting injuries, it must be determined that the assailant's intentional conduct and its resulting harm arose out of the use of an uninsured vehicle. Under the relevant case law in New Mexico, the causal nexus requirement must be of a nature that actively used to aid or facilitate the assault, and where the claimant can show that the injury "originated in, grew out of, or flowed from a use of a vehicle." Blystra, 86 F.3d at 1013. The facts here comport more with the facts in Tollardo, where the assailant approached the victims on foot. The shooting occurred while Plaintiff's vehicle was stationary, and while Plaintiff was still in the driver's seat. When the assailant first got into the driver's seat of Mr. Harrison's vehicle, it was for the purpose of fleeing the scene.

Looking at the undisputed facts in this case, assuming the assailant had a vehicle, it does not qualify as an "active accessory" to the assault on Mr. Harrison, sufficiently to establish the causation link required in Britt. The only vehicle that had any role in the carjacking incident was Plaintiff's own insured car. The Complaint does not allege that the carjacker used a motor vehicle to hide his approach toward the victim (as did the assailant in Barncastle). Nor does it allege that the carjacker used a vehicle in carrying out the assault (as the assailant did in the drive-by shooting in Blystra).

The facts in this case are very similar to the facts in two cases from the Minnesota Court of Appeals. In Edwards v. State Farm Mut. Auto. Ins. Co., 399 N.W.2d 95 (Minn.App.,1986),

an assailant forced the female victim into his car and drove her to a secluded area where he sexually assaulted and murdered the woman, while still inside the car. The assailant then left the victim's body in the isolated area and drove away. The assailant was eventually convicted of first degree murder and was sentenced to life imprisonment

In Gibbons v. Crum & Forster Commercial Ins., unpubl. opin.,1992 WL 340549 (Minn.App.,1992), a cab driver was shot in the back by a passenger seated in his taxicab. The shooting occurred after the cab had reached its destination, but while the engine was still running. The assailant-passenger fled on foot, and was never apprehended.

Whether an injury is sufficiently related to the "use" of a vehicle to invoke the benefits of an automobile policy depends on the particular facts presented in each case. Edwards, 399 N.w.2d at 98. Plaintiff argues that the causal connection is met because the offenses occurred inside the car and because the car was used to conceal the assailant's identity and his use of a gun to shoot Plaintiff in the thigh. However, in this case, as the court found in both Gibbons and Edwards, the Plaintiff's vehicle was merely the situs of his offenses. See, Gibbons, 1992 WL 340549, *2 ("[t]he cab served merely to transport [plaintiff] and the passenger to the situs of the injury, rather than to assist the passenger in the assault"); Edwards, 399 N.W.2d at 98 (fact that plaintiff's injuries were inflicted in the vehicle "cannot by itself elevate the vehicle to the status of an active accessory to the injuries").

The fact that the injury occurred in Plaintiff's vehicle does not make the car an "active accessory" to the assault, because coverage exists only for injuries resulting from the use of a motor vehicle for transportation purposes. Edwards, 399 N.W.2d at 98 (citation omitted). This part of the Britt analysis limits an automobile insurance company's liability to risks that are

associated with "motoring," rather than requiring coverage simply because an uninsured vehicle was involved.  See, e.g., Meric v. Mid-Century Ins. Co., 343 N.W.2d 688 (Minn.App. 1984) (sufficient causation existed where man shot a driver in order to use vehicle to flee from robbery he had committed, because assailant acted with clear and singular purpose of using the vehicle as transportation), cited in Gibbons, 1992 WL 340549 at *2.  In other words, the *driving* the vehicle must have directly caused the assault in order for the vehicle to be considered an "active accessory."

Nor does use of the car merely to transport the victim or assailant transform the vehicle into an "active accessory."  See, Tollardo, 409 F.Supp.2d at 1310 (use of car to flee the scene is not enough to form the necessary causal nexus between the use of an uninsured vehicle and the resulting harm to Plaintiff).  This part of the Britt analysis turns on the existence of some causal connection between use of the vehicle and the victim's injuries in order to invoke coverage under an automobile policy.  Devastating and traumatic as Plaintiff's injuries were, they were not related to the assailant's "use" of a motor vehicle, because the assailant "could have accomplished the same end without the use of a motor vehicle.  Edwards, 399 N.W.2d at 98.   While the assailant used Plaintiff's car to transport himself and Plaintiff, this use of the car is not enough to meet the Britt causation element.   As the court stated in Edwards:

> The law requires a "connection" between the use of the vehicle for transportation and the injuries sustained. There is a connection between these two elements when the injuries arise from a risk associated with motoring. The risk of being a victim of a violent crime is unfortunately a risk associated with living in our society; it is not a risk associated with motoring.

Plaintiff argues that without the car, the assault would not have taken place.  However, as Affirmative notes, the use of the "but-for" argument has been rejected in a Britt analysis.   The

plaintiff in Gibbons made the same argument. The court there, however, noted that the "active accessory" doctrine "goes beyond a mere 'but for' test, in that the vehicle must be 'inextricably linked' to the injury." Gibbons, 1992 WL 340549, *1

### 2.     Acts of Independent Significance

Plaintiff points out that the assailant's acts took place inside the car in an unbroken chain of events. However, this does not satisfy the Britt requirement that no event should break the causal link between the use of the vehicle and the harm suffered. Plaintiff's argument skews the Britt analysis, because it is the assailant's acts which *break* the continuity, not create it. See, Edwards, 399 N.W. 2d at 98 (assailant's "violent acts constituted [events of independent significance which broke the causal link between the 'use' of the vehicle and the injuries inflicted"). As occurred with the woman victim in Edwards, Mr. Harrison's injuries were the result of the assailant's violent actions and not the result of the use of his vehicle.

### 3.     Operating the Vehicle

Affirmative also construes the allegations in the Complaint to assert that the assailant was constructively operating Plaintiff's vehicle throughout the course of the carjacking. The UM coverage endorsement specifically states that an insured is legally entitled to recover from "the owner of operator" of an uninsured motor vehicle.

It is undisputed that Plaintiff was always physically sitting in the driver's seat, at the controls of the car, until after the assailant shot Plaintiff. Affirmative contends that the UM endorsement of the Policy is not applicable to the underlying incident because the assailant never took operational control of the vehicle, and the Plaintiff was in the driver's seat at all times throughout the carjacking. Since there is no dispute that the assailant was not the owner of

13

Plaintiff's car, the question comes down to whether, under the UM endorsement in the Policy, the assailant could be considered the "operator" of Plaintiff's vehicle prior to the shooting.  As mentioned earlier, the Supreme Court of New Mexico has held that the "use" and "operation" of a motor vehicle are not synonymous.  See, United Services Auto. Assoc. v. Nat'l Farmers Union Prop & Cas. Co., 119 N.M. 397, 401 (1995).  "Use" of an automobile denotes its employment for some purpose of the user; the word "operation" denotes "the manipulation of the car's controls in order to propel it as a vehicle."  Id.

Under the express and unambiguous terms of the policy, and the definition of "operation" under New Mexico law, the carjacker was not "operating" Plaintiff's vehicle during the course of the hijacking.  Accordingly, because the carjacker was not using his own vehicle as an "active accessory" to the carjacking, and because the carjacker was not "operating" Plaintiff's vehicle within the meaning of New Mexico law, there is not a sufficient causal nexus between the use of an uninsured vehicle and the resulting harm to Plaintiff.

### 4. Bad faith claims

In addition to breach of contract, the Complaint alleges that Affirmative engaged in unfair trade practices by denying his claim for damages under the Policy.  To show bad faith on the part of an insurer, "there must be no reasonable basis for denying the claim."  Yumukoglu v. Provident Life & Acc. Ins. Co., 131 F.Supp.2d 1215, 1226 (D.N.M., 2001).  Based on the foregoing findings, it should be clear that the case law and Policy language provided Affirmative with a reasonable basis for denying Plaintiff's claim.  Plaintiff also agrees with this assessment, and states that dismissal is proper on this count.

Affirmative requests summary judgment on both of Plaintiff's claims based on Plaintiff not

being entitled to UM coverage.  Based on the Complaint, it appears that all of Plaintiff's claims are dependent upon his entitlement to UM coverage.  Moreover, Plaintiff does not assert that the Court should not grant summary judgment to Affirmative on all his claims if it finds that he is not entitled to coverage.  Accordingly, given the Court's determination that Plaintiff is not entitled to UM coverage under the Policy, the Court finds that Affirmative's motion for summary judgment on all Plaintiff's claims should be granted.

### B.      Plaintiff's Motion for Summary Judgment

The Court has determined that Plaintiff is not entitled to coverage under the Policy's UM endorsement, as a matter of law, based on the undisputed facts of the case.  The arguments raised in Plaintiff's motion for summary judgment do not attenuate Affirmative's position on the legal issues which form the crux of this lawsuit.

Plaintiff argues that the cases discussed above support his position that his vehicle was an "active accessory" in the attack, by directing the focus of the analysis to Plaintiff's car instead of a vehicle which the assailant might have owned or operated prior to approaching Plaintiff.  He contends that the carjacker's use of Plaintiff's car enabled the assailant to hide his identity from potential witnesses by being inside the car with Plaintiff and forcing Plaintiff to drive the car to a secluded place.  However, in applying the Britt test, the case law addressing whether intentional conduct and its resulting harm arises out of the use of an uninsured vehicle focuses on the uninsured vehicle of the assailant.

Moreover, the express language of the UM provision provides coverage for the owner or operator of an "*uninsured* motor vehicle."  Deft's Ex. C at 10 (emphasis added).  Plaintiff's car cannot qualify under these terms because it was in fact insured.  There is no legal basis to stray

15

from the plain meaning of the endorsement language.  See, Christmas v. Cimarron Realty Co., 98 N.M. 330, 332 (1982) (court will apply the plain meaning of the contract language).

Plaintiff relies on a Missouri case to support his contention that he is entitled to UM coverage for the carjacking incident.  See, Rudden v. American Family Mut. Ins. Co., 398 F.Supp. 2d 1067 (E.D.Mo. 2005).  However, there is, as Affirmative points out, a critical distinction in the fact pattern.  In Rudden, the assailant got in the driver's seat and took operational control of the victim's vehicle.  Under the facts of that case, plaintiff's insured vehicle was parked on a street when an unknown assailant entered the vehicle.  The assailant drove off while plaintiff was still inside her vehicle, forcing plaintiff from the vehicle while it was in motion and causing serious personal injuries to the plaintiff.

Rudden is not helpful to this case because it lacks a fact pattern which is central to Plaintiff's arguments.  Plaintiff claims that his mere position in the driver's seat is not the equivalent of being the "operator"of the motor vehicle.  He contends that the carjacker became the "operator" when he made demands of Plaintiff after entering the vehicle regarding where and how fast to drive.  But Plaintiff offers no case law to support this argument, either from New Mexico or Missouri; nor can he show that this position can be maintained by any reasonable construction of the Policy or UM endorsement language.

Plaintiff's position is weakened further by Affirmative's reference to Missouri case law, which appears to support a plain reading of the UM endorsement that the assailant must be operating an uninsured motor vehicle in order to trigger coverage, Richardson v. Farm Bureau Town & Country Ins. Co., 899 S.W.2d 119, 120 (Mo.App. E.D. 1995); and Missouri state statutes which define "operating" as "physically driving or operating a motor vehicle," § 577.001 V.A.M.S. 2006.

16

Despite being under control of the carjacker, Mr. Harrison was physically operating the car during the carjacking. He had control of the steering wheel, the accelerator and the brakes. There is no suggestion anywhere in the undisputed facts that the assailant ever attempted to physically seize control of the vehicle, even for a short period – which could change the scenario, rendering the UM provision subject to more than one reasonable interpretation, and therefore ambiguous. See, e.g. Harrison v. Tomes, 956 S.W.2d 268, 270 (Mo. 1997) (term "operated" may be interpreted broadly to include any volitional act of control that effects the movement of a vehicle, such as when a passenger intentionally grabs the steering wheel without the driver's consent).

Thus, even if the UM provision could be reasonably construed to include Plaintiff's car when occupied by an individual for whom coverage is excluded under the Policy (such as the carjacker), the language of the endorsement is unambiguous in referring to recovery from an "owner or operator" of the uninsured vehicle. The end result would still be a denial of coverage for Plaintiff because there is no reasonable way to interpret the facts or the UM provision in the Policy to apply to the undisputed facts here – where Plaintiff "operated" the car in the plain meaning of the Policy.

Accordingly, based on the undisputed facts, the express language of the Policy and the UM endorsement, and the relevant case law in both New Mexico and Missouri, I conclude that Plaintiff, and not the carjacker, was operating the car during the underlying incident, and that therefore, there is no UM coverage under the Policy.

## IV.   CONCLUSION

Mr. Harrison was tragically the victim of a serious, violent crime. However, it is the role

of the courts to interpret and enforce a contract as written by the parties.  Schaefer v. Hinkle, 93 N.M. 129, 597 P.2d 314 (1979).  In this case, the carjacker did not use an uninsured vehicle as an "active accessory" to the carjacking, and did not "operate" plaintiff's vehicle within the meaning of New Mexico or Missouri law.  Thus, there was not a sufficient causal nexus between the use of an uninsured vehicle and the resulting harm to Plaintiff, and no basis for coverage under the Policy.

Plaintiff agrees that there is no basis to litigate his bad faith claim against Affirmative.  Therefore, Affirmative is therefore entitled to summary judgment on Plaintiff's claims and Plaintiff's summary judgment motion shall be denied.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment on its Counter-Claim for Declaratory Judgment and on Plaintiff's Claims for Breach of Insurance Contract and Bad Faith Insurance Practices **(Doc. 15)** is hereby GRANTED for the above stated reasons;

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment **(Doc. 14)** is hereby DENIED for the above stated reasons.

A Judgment in accordance with this Memorandum Opinion and Order shall issue.

UNITED STATES DISTRICT JUDGE